# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In re K.F.-1 and H.H.**

**No. 20-0426** (Webster County 19-JA-9 and 19-JA-10)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother E.H., by counsel Jared S. Frame, appeals the Circuit Court of Webster County's April 7, 2020, order terminating her parental rights to K.F.-1 and H.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period when she was fully compliant with the services provided and when no evidence was presented that she caused the injuries sustained by K.F.-1 and K.F.-2.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed a child abuse and neglect petition against petitioner after her two-month-old twin children, K.F.-1 and K.F.-2, were hospitalized due to rib fractures they sustained. The DHHR alleged that the twins' father, P.F., reported that he left K.F.-2 on a bed and went to the kitchen for a few moments. When he returned to the bedroom, K.F.-2 was unresponsive. P.F. performed cardiopulmonary resuscitation ("CPR") on the child, and K.F.-2 was eventually transported to a hospital in Webster County, West Virginia. Shortly thereafter, K.F.-2 was flown to Ruby Memorial Hospital in Morgantown, West Virginia. K.F.-1 was also admitted

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because K.F.-1 shares initials with her brother, who died during the proceedings below, we will refer to them as K.F.-1 and K.F.-2, respectively, throughout this memorandum decision.

to the hospital with injuries. The parents admitted that the children "had rolled off the bed approximately three weeks to a month ago." Petitioner also claimed that K.F.-1 "slipped off her lap" and fell to the floor while she was feeding her. Petitioner admitted to abusing methamphetamine and marijuana while the children were in her care.

Upon investigating the matter, a Child Protective Services ("CPS") worker spoke to K.F.-1's treating physician, Dr. Christine Kelley. Dr. Kelley informed the CPS worker that the children could not yet roll over and, thus, could not have rolled off a bed as described by the parents. Dr. Kelley reported that K.F.-1 was having trouble breathing and was undergoing an "abusive trauma workup." The worker also spoke to K.F.-2's treating physician, Dr. Wail Ali. Dr. Ali reported that K.F.-2 had multiple bilateral rib fractures that were the result of either nonaccidental trauma or improper CPR measures, but that a final diagnosis could not yet be made due to the child's unstable medical condition. Dr. Ali stated that K.F.-2 did not appear to have any brain activity, was on life support, and that his prognosis for survival was "not good."

The circuit court held a preliminary hearing later in May of 2019. The DHHR advised the circuit court that K.F.-2 passed away following the petition's filing.[2] Thereafter, the parents waived their preliminary hearing.

The circuit court held an adjudicatory hearing over the course of two days in October of 2019 and December of 2019. The DHHR presented the testimony of several doctors, the medical examiner, a law enforcement officer, and a DHHR worker. The doctors' testimony established that K.F.-2 did not have any genetic disorders contributing to his broken ribs, and they opined that his injuries were nonaccidental. The testimony also established that K.F.-1's injuries were nonaccidental. Additionally, the doctors opined that the children's rib fractures were inconsistent with the explanations provided by the parents. The medical examiner, however, testified that she could not determine whether K.F.-2's rib fractures were nonaccidental. The medical examiner also remarked that the rib fractures were at least one week old and were in the process of healing.

A law enforcement officer testified regarding his investigation into the children's injuries. The officer stated that he interviewed the parents and that both denied knowing how the injuries occurred. The parents did admit, however, to abusing drugs while the children were in their care. The officer also testified that he found drug paraphernalia in a garbage can during a search of the parents' home.

By order entered on January 23, 2020, the circuit court found that K.F.-1's injuries were nonaccidental and inconsistent with the parent's explanations.[3] The circuit court also found that the parents admitted to abusing controlled substances while the children were in their care. Accordingly, the circuit court adjudicated the parents as abusing parents.

---

[2]Testimony at the adjudicatory hearing established that K.F.-2's cause of death was bronchopneumonia. The medical experts opined that the child's broken ribs were not the cause of his death but could have contributed to it.

[3]Because the medical examiner testified that she was unable to determine whether K.F.-2's injuries were nonaccidental, the circuit court declined to make findings regarding his injuries.

2

The circuit court held a dispositional hearing in March of 2020. A CPS worker testified that the parents were participating in parenting classes, attending supervised visits with the children, and submitting to drug screens. According to the CPS worker, the parents were compliant with the services and did not submit any positive drug screens. However, the parents never identified how K.F.-1 or K.F.-2 were injured. The CPS worker reported that the DHHR recommended termination of the parents' parental rights based on their failure to report the abuser and she opined that there were no services that could be provided that would guarantee the safety of the children absent knowing who committed the abuse.

A pediatrician and a physician's assistant who attended to the children a few days before their hospitalization testified that they did not notice the rib fractures at the time of the appointment. Petitioner testified and requested a post-adjudicatory improvement period. Petitioner stated that she was participating in parenting classes and supervised visits and submitted no positive drug screens. Petitioner also testified that she sought out counseling without the DHHR's assistance. However, petitioner stated that she did not know how K.F.-1 and K.F-2. sustained their injuries and claimed she had only used methamphetamine "a few times in [her] lifetime."

By order entered on April 7, 2020, the circuit court terminated petitioner's parental rights to K.F.-1 and H.H. and denied her motion for a post-adjudicatory improvement period. In support, the circuit court found that petitioner abused methamphetamine while the newborn children were in the home. The circuit court additionally found that the DHHR was not required to provide reasonable efforts because the children were the victims of assault resulting in serious bodily injury while in petitioner's care and that she failed to identify how the children's injuries occurred. Resultantly, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. Petitioner appeals the April 7, 2020 dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[4]The parental rights of K.F.-1's father were terminated below. The permanency plan for K.F.-1 is adoption by her foster family. H.H.'s father successfully completed an improvement period and H.H. was returned to his care. The permanency plan for H.H. is to remain with her father.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. Petitioner contends that she complied with all services offered by the DHHR, including parenting classes, supervised visitation, and random drug screens. Petitioner states that after her initial positive drug screen, she tested negative for drugs for the remainder of the proceedings. Petitioner also claims that there was no evidence introduced that she caused, or knew who caused, the injuries of K.F.-1 and K.F.-2. Petitioner points out that neither the children's pediatrician nor attending physician's assistant noted the children's rib fractures in the days prior to their hospitalization and avers that she should not be held responsible for not knowing the cause of their injuries. Petitioner likens her case to *In re S.J.*, No. 18-0243, 2018 WL 6119793, at *1 (W. Va. Nov. 21, 2018)(memorandum decision), wherein this Court vacated the termination of the mother's parental rights and remanded with instructions to grant her an improvement period even though she initially refused to admit how her children were injured or who perpetrated the abuse against them. In contrast, petitioner distinguishes her case from *In re Jeffrey R.L.*, in which we held that

> [p]arental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

190 W. Va. 24, 435 S.E.2d 162 (1993), syl. pt. 3. Petitioner contends that in *In re Jeffrey R.L.*, the DHHR was able to prove that the injures to the children were nonaccidental, unlike the case at bar. Based on these circumstances, petitioner avers that she should have been granted an improvement period prior to the termination of her parental rights.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for a post-adjudicatory improvement period. We acknowledge that petitioner complied with parenting classes, supervised visitation, and random drug screens. However, at no time during the proceedings below did petitioner provide a satisfactory explanation for the rib fractures K.F.-

4

1 and K.F.-2 sustained while in her care. On appeal, petitioner continues to deny any knowledge of how the children were injured or the identity of the perpetrator of the abuse, stating "even now, [petitioner] does not know how the minor children received the rib injuries." These claims are not credible in light of the substantial medical testimony that the injuries were the result of nonaccidental trauma and the parents' own statements that they primarily cared for the children. This Court has found that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on petitioner's failure to demonstrate her likelihood of fully participating in an improvement period and her failure to acknowledge the issues of abuse, we find no error in the circuit court's denial of her motion for a post-adjudicatory improvement period.

Moreover, although petitioner likens her case to *In re S.J.*, the cases are distinguishable. In that case, the children were rendered unconscious due to the absorption or consumption of synthetic marijuana. In the beginning of that case, the mother denied knowledge of how the children were rendered unconscious, and later, how they were exposed to synthetic marijuana. *In re S.J.*, No. 18-0243, 2018 WL 6119793, at *1. However, at the adjudicatory and dispositional hearings, the mother acknowledged that her marijuana use led to the children's medical condition. Despite these clear admissions on the record, the CPS worker testified that the mother failed to accept responsibility for her actions, and the circuit court found that the mother denied that the children were exposed to marijuana. *Id.* at *2. On appeal, we found that the circuit court's findings were erroneous in light of our review of the record and the evidence presented below and held that the mother "accepted responsibility for her actions, complied with every service offered to her, and had a strong bond with the children, all of which lends itself to the conclusion that she was likely to fully participate in an improvement period and should have been granted one." *Id.* at *3. In the present case, petitioner has never provided an explanation as to what or who caused the injuries to K.F.-1 and K.F.-2. despite admitting she and the father primarily cared for the children and she observed no one else handle the children or roughhouse with them. Moreover, the children were two months old when they were hospitalized and K.F.-1 was removed from her care, and there is no evidence of any established bond between petitioner and K.F.-1. Accordingly, we find no merit in petitioner's attempt to compare her case to *In re S.J.*

We likewise readily dispose of petitioner's claim that her case is distinguishable from *In re Jeffrey R.L.* While petitioner claims that the DHHR in the instant case did not prove that the injuries were nonaccidental, unlike in *In re Jeffrey R.L.*, we note that her argument is largely prefaced on the injuries sustained to K.F.-2. It is true that the circuit court found that the DHHR did not meet its burden of proving that the injuries sustained by K.F.-2 were nonaccidental. However, the circuit court found that the uncontroverted evidence established that the injuries sustained by K.F.-1 were nonaccidental, and petitioner failed to offer any explanation as to her injuries. While petitioner claims that the circuit court found that K.F.-1's injuries were

5

nonaccidental due to the fact that she did not disclose the perpetrator of the abuse, the doctors opined that the injuries were consistent with nonaccidental trauma and that petitioner's explanations were inconsistent with the injuries. Further, as noted above, petitioner admitted that she and the father primarily cared for the children and she did not identify the perpetrator of the abuse. As such, we find no merit in these claims.

The evidence as set forth above likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) sets forth that "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" means that the abusing parent "ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Below, the doctors testified that the explanations of the injuries given by the parents, such as falling from a bed, were unlikely given the children's prematurity, age, and the heights of the beds and chairs in the home, and the circuit court found that the evidence regarding the nonaccidental nature of K.F.-1's injuries was uncontradicted. As noted above, petitioner continually denied knowledge of K.F.-1's injuries or the perpetrator of the abuse in the face of medical testimony that the injuries were due to nonaccidental trauma and her own admission that the children were cared for primarily by her and K.F.-1's father. As provided above, a circuit court may terminate a parent's parental rights when they refuse to identify the perpetrator of physical abuse. *In re Jeffrey R.L.*, 190 W. Va. at 25-26, 435 S.E.2d at 163-64, syl. pt. 3.

Although petitioner raises issue with the termination of her parental rights to H.H. when that child was not injured, we find her argument unavailing. Petitioner failed to identify the perpetrator of the abuse or provide an explanation for the injuries sustained by the other children, and the CPS worker testified that there were no services available that would protect the children, including H.H., given this failure. Without an acknowledgement of the conditions of the abuse or the perpetrator of the abuse, the circuit court correctly determined that there was no reasonable likelihood that the conditions would be substantially corrected in the near future. Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights to K.F.-1 and H.H.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6